Marie C. HICKS *v.* Sula M. HALL and Ronald Murry HALL

5-5983                                              484 S.W. 2d 696

Opinion delivered September 25, 1972

*Brown, Compton & Prewett,* for appellant.

*Bruce Bennett,* for appellees.

JOHN A. FOGLEMAN, Justice. On May 8, 1971, at 10:25 a.m., the appellant, Marie C. Hicks, was driving her vehicle in a westerly direction on the Myrtle Grove Road (Highway 335) on her way to services at the Rehobeth Baptist Church, located on the south side of the road and at the crest of a hill. As appellant was making a left turn off of the Myrtle Grove Road and onto the church parking area, the appellee, Sula M. Hall, who was traveling in the opposite direction came over the crest of the hill and collided with the rear end of the appellant's vehicle at a point approximately two feet four inches from the south edge of the road.

The court, sitting without a jury, found that appellant was 60% negligent and appellee was 40% negligent and entered judgment for the appellee, Ronald M. Hall, in the sum of $1,442.42 and for the appellee, Sula M. Hall, in the sum of $2,782.80 including 60% of $3,500 for pain and suffering endured. From this verdict and judgment Mrs. Hicks appeals, asserting that there is no substantial evidence to support either the finding of the trial court that the negligence of appellant was greater than that of appellee or the fixing of Sula M. Hall's damages for pain and suffering at $3,500.

We have carefully reviewed the evidence as abstracted and find substantial evidentiary support for the circuit court's finding on the question of negligence. There was evidence from which the court might have found that appellant negligently crossed the center line of Highway 335 in making a left-hand turn from a point just west of the crest of a hill into a private entrance to a church parking lot, without giving any signal, when her view of approaching traffic was unobstructed for three-fourths of a mile, and that of a driver approaching from the opposite direction was limited to approximately 100 feet. Sula Hall

testified that appellant turned across the highway when the two vehicles were only 100 feet apart without coming to a stop or giving any indication that she was about to turn. See Ark. Stat. Ann. §§ 75-618—620 (Repl. 1957); *Pilgrim* v. *Joyner,* 234 Ark. 945, 355 S.W. 2d 616. If appellant's range of vision of approaching traffic extended for three-fourths of a mile, it would have been impossible for her not to have seen the approaching vehicle driven by Mrs. Hall, if she had been keeping a proper lookout and observing the rules of the road governing left turns. As appellant points out, there was evidence from which the court might have believed that Sula Hall approached a place known to her to be hazardous at a speed as high as 65 miles per hour, and that the skid marks made by her vehicle indicated that she bore slightly to her right before the collision rather than to her left as she claimed, when the collision might have been avoided had she turned to her left. We are unable to say that Mrs. Hall's negligence was, as a matter of law, greater than that of Mrs. Hicks.

We are also unable to say that there was no substantial evidence to support damages of $3,500 for pain and suffering. Mrs. Hall's physician prescribed medication for headache and nausea when he saw her at the hospital shortly after the occurrence. Three days later she complained to him of persistence of headaches and nausea, which even caused her to awaken at night and he prescribed a pain medication. On May 13, he caused her to be admitted to a hospital because of persistent headaches and nausea, and she remained there until May 18, after which he restricted her activities until May 24, because of his diagnosis of concussion. His discharge summary showed that she was still having difficulty with headaches and peculiar sensations at night. When he saw her on November 19, 1971, she reported that she still had occasional headaches, but that the last severe one had occurred about six weeks earlier. This doctor said that headaches and nausea for a reasonable period of time after a concussion were not unusual and that a small percentage of those who suffer head injuries have a symptom complex of dizziness, headache and nausea which usually ends within six to twelve months after the injury. He testified that a brain

concussion destroys a certain amount of blood vessels in the brain and very small capillaries are disrupted, and could, for a long time after discharge by a treating physician, cause peculiar sensations and headaches from which complete recovery might require several months.

Mrs. Hall stated that, at the time of the trial, she was still having persistent headaches and nausea and taking the pain medication prescribed by Dr. Pirnique and that she had never had headaches, nausea or persistent insomnia before this collision. She stated that she had returned to the hospital under the supervision of Dr. Ellis, her regular physician, only one and one-half months prior to the trial, because of headaches. Her husband said that on many occasions he had come home from work and found Mrs. Hall crying because of a severe headache and that, following the accident, she had been unable to carry out her duties as a housewife and mother.

The judgment is affirmed.